## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **NEW PROCESS STEEL, L.P.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. H-98-4075** |
| | § | |
| **UNION PACIFIC RAILROAD** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

### MEMORANDUM AND ORDER

Pending before the Court are three motions for partial summary judgment filed by Defendant Union Pacific Railroad Company, as well as Defendant's motion for reconsideration of this Court's order granting Plaintiff New Process Steel, L.P. leave to file its Second Amended Complaint. For the reasons set forth below, Defendant's motion for partial summary judgment on Plaintiff's third-party beneficiary breach of contract claim (Doc. No. 104) is **GRANTED**; Defendant's motion for partial summary judgment on Plaintiff's Carmack Amendment claim (Doc. No. 110) is **GRANTED**; and Defendant's motion for partial summary judgment on Plaintiff's damages (Doc. No. 118) is **DENIED AS MOOT**. Furthermore, Defendant's motion for reconsideration (Doc. No. 119) is **DENIED AS MOOT**.

### I. BACKGROUND

Plaintiff New Process Steel ("New Process") is a processor and distributor of metal products. It purchases large quantities of steel from steel mills around the country, processes that steel, and then sells it to manufacturers of consumer goods. Union Pacific Railroad Company ("Union Pacific"), a railroad common carrier, regularly delivers steel to New Process from various steel mills, including U.S. Steel, Bethlehem Steel Corporation, A-K Steel, GalvTech,

MetalTech, BHP, and I/N Kote. These steel mills have entered into transportation contracts with Union Pacific to facilitate the steel shipments, and they have issued bills of lading that name New Process as consignee and designated recipient of the steel shipments.

In 1996, Union Pacific merged with Southern Pacific Railway Corporation, and that merger caused delays in the shipments of steel to New Process. As a result of the delays, New Process alleges that, between July 1, 1997, and July 31, 1998, it was forced to obtain substitute steel deliveries at significantly increased costs. It now seeks to recover those costs as damages from Union Pacific in excess of one million dollars.

New Process originally filed suit against Union Pacific in state court for negligent misrepresentation, negligence, and breach of contract, but Union Pacific removed the case to federal district court based on its position that the case should be governed by the federal Carmack Amendment. 49 U.S.C. § 11706 (2006). The district court granted summary judgment to Union Pacific on all of the claims, and New Process appealed. The Fifth Circuit held that the case was properly in federal court because the Carmack Amendment, which addresses the liability of common carriers under bills of lading, completely preempts state-law causes of action within the scope of the Amendment. Thus, the Fifth Circuit found that New Process's state law tort claims were preempted by the Carmack Amendment, but did not address the breach of contract claim. It also reversed the district court's grant of summary judgment on the Carmack Amendment claim and remanded the case. Now, Union Pacific has again moved for summary judgment on New Process's breach of contract claim as a third-party beneficiary, its Carmack Amendment claim, and its damages claims.

2

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

## III. MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT AS A THIRD-PARTY BENEFICIARY

New Process has brought suit against Union Pacific for breach of contract on the theory that it is a third-party beneficiary to the transportation contracts between the steel mills and Union Pacific. Union Pacific argues that the third-party beneficiary breach of contract claim is preempted by the Carmack Amendment, but, even if it is not, New Process is not a third-party beneficiary.[1]

It has long been held that the Carmack Amendment preempts all state common law claims for loss or damage to property that was being transported by an interstate carrier. *Adams*

---

[1] In its Response to Union Pacific's motion for partial summary judgment on the third-party beneficiary claim (Doc. No. 133), New Process asks the Court to continue the ruling on this issue until it deposes Union Pacific's corporate representative on the transportation contracts at issue. New Process has since cancelled the scheduled deposition of Union Pacific's corporate representative, and the Court has been presented with no other reason to delay its ruling, so Union Pacific's motion for continuance is therefore **DENIED**.

3

*Express Co. v. Croninger*, 226 U.S. 491, 505 (1913). In order to bring national uniformity to the potential liability for interstate carriers, the exclusive avenue for recovery for any such loss or damage is the Carmack Amendment. *Id.*; *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) ("We are persuaded by the preceding decisions and analysis offered by the Supreme Court, and this Court, that Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier."); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993) ("[T]he district court correctly held that federal law, via the Carmack Amendment, preempts [plaintiff's] state law claims. To hold otherwise would only defeat the purpose of the statute, which was to create uniformity out of disparity.").

In accordance with this rule, the Fifth Circuit has held that state-law breach of contract claims against interstate carriers are preempted by the Carmack Amendment. *See, e.g.*, *Moffit*, 6 F.3d at 307 (finding that state law breach of contract claim, among others, is preempted); *Air Prods. & Chems., Inc. v. Ill. Central Gulf R.R. Co.*, 721 F.2d 483, 485 (5th Cir. 1983) (same). However, it has expressly reserved ruling on whether claims for breach of contract as a third-party beneficiary are preempted. *New Process Steel Corp. v. Union Pac. R.R. Co.*, 91 Fed. Appx. 895, 898 n.2 (5th Cir. 2003).

Other courts that have addressed third-party beneficiary claims have found them to be preempted by the Carmack Amendment. For example, in *NYK Line, Inc. v. The Burlington Northern & Santa Fe Railway Co.*, a federal district court held that a third-party beneficiary breach of contract claim, among others, was "absolutely preempted by the Carmack Amendment." 222 F. Supp. 2d 1176, 1179 (C.D. Cal. 2002). In *Taylor v. Mayflower Transit, Inc.*, the plaintiff conceded and the district court affirmed the same. 22 F. Supp. 2d 509, 511

(W.D.N.C. 1998). In *Polesuk v. CBR Systems, Inc.*, the plaintiffs wished to amend their complaint to add a third-party beneficiary breach of contract claim, but the district court denied the request, explaining, "Regardless of how plaintiffs designate the proposed state law causes of action, they are nothing more than claims seeking to recover for the loss of property which was being transported by an interstate carrier," and hence were preempted. 2006 WL 2796789, at *12 (S.D.N.Y. Sept. 29, 2006). Finally, in *Esprit de Corp. v. Victory Express, Inc.*, the Ninth Circuit seemed to presume that a third-party beneficiary claim would be preempted by the Carmack Amendment, as it reached the claim only because it determined that the Carmack Amendment did not apply in that particular case. 111 F.3d 138, 1997 WL 191466, at *3 (9th Cir. 1997) (unpublished opinion).

In light of these rulings, as well as the policy of uniformity that underlies the Carmack Amendment, this Court is of the opinion that, when a plaintiff seeks to recover for lost or damaged property that was transported by an interstate carrier, a third-party beneficiary breach of contract claim is preempted by the Carmack Amendment. The Court has not been presented with any other case permitting a third-party beneficiary claim to proceed, nor can it find a basis for treating a breach of contract claim brought by a third-party beneficiary differently from a breach of contract claim brought by a party to the contract. Because all other state law tort and contract claims are preempted by the Carmack Amendment, third-party beneficiary breach of contract claims must also be preempted. And because the claim is preempted, the Court need not reach Union Pacific's argument that New Process is not, in fact, a third-party beneficiary. Union Pacific's motion for partial summary judgment on the third-party beneficiary breach of contract claim is **GRANTED**.

5

## IV. MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CARMACK AMENDMENT CLAIM

New Process has also asserted a claim against Union Pacific under the Carmack Amendment, and Union Pacific has moved for summary judgment on that claim on the ground that New Process did not comply with the mandatory notice requirements.[2] The Carmack Amendment allows carriers to set limitations periods for filing notice of claims against them, as long as those periods are not less than nine months. 49 U.S.C. § 11706(e) (2006). In this case, the bills of lading governing the shipments of steel to New Process set the limitations period at nine months.[3]

The federal regulations implementing the Carmack Amendment set forth the particular form that notice of a claim against a carrier must take. *See* 49 C.F.R. §§ 1005.1 – 1005.7 (2006). Specifically, the notice must be written or electronic, and it must "(1) [c]ontain[] facts sufficient to identify the baggage or shipment (or shipments) of property, (2) assert[] liability for alleged loss, damage, injury, or delay, and (3) mak[e] a claim for the payment of a specified or determinable amount of money." 49 C.F.R. § 1005.2(b). Importantly, if a claimant fails to file proper notice within the limitations period set forth in the bill of lading, then it cannot recover unless it can bring itself within either of two exceptions, as noted below.

---

[2] Two incidental motions have been filed in relation to Union Pacific's motion for partial summary judgment on the Carmack Amendment claim. First, New Process filed a motion for leave to file a supplemental response (Doc. No. 134) in combination with its reply brief, and that motion is **GRANTED**. Second, Union Pacific filed an unopposed motion for leave to supplement the summary judgment record (Doc. No. 139) with its final reply brief, and that motion is also **GRANTED**.

[3] The applicable bill of lading was the Uniform Straight Bill of Lading, which provided:

> As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after the delivery of the property . . . or, in the case of failure to make a delivery, then within nine months after a reasonable time for delivery has elapsed . . . . Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

Def.'s Mot. Partial Summ. J., Ex. A, Uniform Straight Bill of Lading, § 2(b).

6

While federal courts have been somewhat lenient in their application of the substantive notice requirements, the requirement that *some* notice must be filed within the limitations period has been strictly construed. *See Salzstein v. Bekins Van Lines Inc.*, 993 F.2d 1187, 1189-90 (5th Cir. 1993) ("Other courts have addressed whether strict compliance with the applicable filing regulations is required. With one exception, the answers uniformly have been affirmative."). *See also Nedlloyd Lines, B.V., Corp. v. Harris Transport Co.*, 922 F.2d 905, 907 (1st Cir. 1991) (agreeing with other Circuits that compliance with the notice provision "is an essential prerequisite to recovery"); *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 901-02 (2d Cir. 1980) (barring recovery when notice was filed only one day past the nine month limitations period); *B.A. Walterman Co. v. Penn R.R.*, 295 F.2d 627, 628 (6th Cir. 1961) (holding that "[c]ompliance with this [notice] provision is mandatory"); *Trailblazers Int'l, Inc. v. Cent. Freight Lines, Inc.*, 951 F. Supp. 121, 123 (S.D. Tex. 1996) ("Compliance with this provision is a mandatory condition precedent to recovery on a claim, and the condition is strictly construed."). Thus, unless a claimant files notice with the carrier within nine months, the claim is barred. *Landess v. N. Am. Van Lines, Inc.*, 977 F. Supp. 1274, 1281 (E.D. Tex. 1997).

There are, however, two exceptions to the mandatory nine-month notice requirement. Failure to provide notice is excused (1) when the claimant is unable, despite reasonable diligence, to ascertain the extent of its loss within the filing period, or (2) when the carrier's conduct induced the claimant to believe that a timely filing was unnecessary. *Salzstein*, 993 F.2d at 1191. In this case, New Process concedes that it gave no notice to Union Pacific of its claims. It does, however, argue that one of the exceptions applies. Specifically, New Process claims that, under the second exception, Union Pacific should be estopped from asserting a notice deficiency because it induced New Process to believe that filing a claim was not necessary.

7

In order to establish that estoppel is appropriate, a claimant must demonstrate that the carrier engaged in affirmative conduct or made statements that misled the claimant to believe that the notice requirement was excused. *Landess*, 977 F. Supp. at 1282-83 ("Considering that the Fifth Circuit has adopted a strict compliance rule, and that such rule was adopted under the authority of *Pathway Bellows*, *Nedlloyd Lines*, and *Perini-North*, there is no reason to think that the Fifth Circuit would not also follow those cases in their estoppel analysis. All of those cases suggest that for estoppel to be appropriate, there must be some misleading conduct or statement by the Defendant."). For example, the Third Circuit applied estoppel to excuse a failure to provide notice in *Perini-North River Associates v. Chesapeake & Ohio Railway Company*, 562 F.2d 269 (3d Cir. 1977). There, a representative of the railroad expressly told the shipper that it need not file a claim, the carrier departed from its normal practice of forwarding claim forms to the shipper, the carrier never mentioned the lack of notice throughout the course of its "long and pleasant relationship" with the shipper,[4] and the carrier informed the shipper that a file had been created for the claim, which is normally done only after written notice is filed. *Id.* at 274. Based on all of these actions by the carrier, the court found that the shipper was induced not to file proper notice and thus the carrier was estopped from asserting lack of notice as a defense.

Similarly, the Northern District of Illinois upheld an estoppel exception to the plaintiff's failure to file notice in *Union Carbide Corp. v. Consolidated Rail Corp.*, 517 F. Supp. 1094 (N.D. Ill. 1981). In that case, the carrier lied to the shipper, telling it that its shipment was en route to its destination when, in fact, the shipment had gotten derailed and been sold for salvage. *Id.* at 1098. Based on this misrepresentation, the court excused the claimant's failure to provide notice.

---

[4] The court was careful to note, however, that it is not the carrier's duty to remind a shipper of the notice requirement or of a possible claim. *Perini-North*, 562 F.2d at 274.

Notably, courts have refused to excuse the failure to provide notice when the carrier has actual knowledge of the circumstances giving rise to the claim, but has not committed any affirmative act or made any statement to indicate that filing a claim was unnecessary. For instance, in *S&H Hardware & Supply Co. v. Yellow Transportation, Inc.*, the carrier had actual knowledge that its own employees were involved in purposely misdirecting shipments of goods and even participated in an undercover investigation, but the Third Circuit held that the carrier's actual knowledge of the claim did not excuse the shipper's failure to file proper notice. 432 F.3d 550, 555-57 (3d Cir. 2005).

Similarly, in *Landess v. North American Van Lines, Inc.*, the carrier had actual notice of the claim, processed it, and even sent a settlement check to the shipper for the amount it determined was lost. 977 F. Supp. at 1281-82. The court nevertheless refused to excuse the failure to file proper notice because, although the carrier had actual knowledge of the claim, it did not engage in conduct or make statements to mislead the shipper into believing that filing notice was unnecessary. *Id.* at 1282-83. "Estoppel concentrates on the *acts* of a defendant, not what the defendant does or does not know. A defendant's actual knowledge of the damage or potential claim is not enough to remove [p]laintiffs from the obligation to file." *Id.* at 1282. *Accord Perini-North*, 562 F.2d at 273 ("We do not question the accepted rule that actual knowledge on the part of the carrier cannot substitute for the written notice required by the bill of lading."); *Hartog Trading Corp. v. M/V Presidente Ibanez*, 1991 WL 33605, *2 (E.D. La. 1991) ("actual knowledge by the carrier of damage to the cargo does not obviate the legal requirement for the timely filing of sufficient written notice of claim").

Thus, in order for New Process to be excused from the notice requirement, it must produce evidence that Union Pacific affirmatively engaged in conduct or made statements that

9

misled New Process to believe that filing notice was unnecessary. However, the facts that New Process has alleged amount to nothing more than evidence of actual knowledge on Union Pacific's part. It claims that Union Pacific knew about the rail delays after the merger with Southern Pacific, investigated the cause, implemented remedial plans, and publicized its plans to all of its customers, including New Process. None of these allegations, however, satisfies the necessary elements for estoppel. There was no statement by Union Pacific that New Process need not file notice, as there was in *Perini-North*, nor any misrepresentation of the circumstances surrounding the claim, as there was in *Union Carbide*. The facts of this case are very similar to those in *Landess*, where the carrier investigated the claim on its own and even issued a settlement check to the shipper, but the court in that case found that evidence that the carrier had actual knowledge was not sufficient to warrant estoppel. As the Third Circuit explained in *S&H Hardware*,

> [the carrier] did not say or do anything to lead [the shipper] to believe that it would not need to meet the claim filing requirement. [The carrier] did not tell [the shipper] it was not necessary to file a claim and did not give [the shipper] faulty information as to the proper method of filing. We cannot, therefore, apply the doctrine of estoppel in this case to excuse [the shipper] from the notice requirement.

432 F.3d at 556 (citing *Perini-North*, 562 F.2d at 272-73).

While New Process urges that the question of whether it was induced not to file notice is a fact question, evidence of actual knowledge alone is legally insufficient to raise a question of fact as to estoppel. Thus, because New Process has failed to produce any evidence that Union Pacific said or did anything to lead it to believe that it would not need to meet the claim filing requirement, New Process has failed to provide sufficient evidence to create a fact question.

10

In addition to the lack of evidence of a specific affirmative inducement by Union Pacific, New Process has also failed to provide evidence of reliance on Union Pacific's statements or actions. In fact, the COO of New Process admitted in a deposition that New Process was unaware of the Carmack Amendment and its related notice requirements at the time of the rail delays, and thus could not have relied on any conduct by Union Pacific in not filing notice. Again, New Process has not provided sufficient evidence to raise a question of fact regarding reliance.

Perhaps recognizing the weaknesses in its evidence, New Process argues strenuously that the policy behind the notice requirement was served in this case despite the failure to provide notice. New Process asserts that the purpose of the notice requirement is solely to give the carrier the ability to investigate any remedy any potential problems, and that that purpose was served here because Union Pacific was aware of the rail delays and, in fact, undertook investigative and remedial action. However, the purpose cited by New Process is not the *sole* purpose of the notice requirement. It was also intended to put carriers on notice that the shipper plans to claim damages and the amount of damages that are asserted. *See St. Louis, Iron Mt. & S. Ry. Co. v. Starbird*, 243 U.S. 592, 605 (1917) ("Such notice puts in permanent form the evidence of an intention to claim damages"). In this case, despite the fact that Union Pacific was aware of the rail delays and undertook an investigation without notice from New Process, that investigation could not have made Union Pacific aware that New Process intended to file a claim for damages against it and in what amount. Thus, even policy cannot excuse New Process's failure to file notice of its claim.

Finally, New Process argues that Union Pacific should not be permitted to use a technicality like the notice requirement to escape liability for more than one million dollars of

damage that it caused. The Court is sympathetic to New Process's plight, but this case is not the first in which a carrier avoided million-dollar liability on this technicality. In *S&H Hardware*, the Third Circuit refused to excuse the failure to provide notice and affirmed summary judgment for the carrier despite the fact that the shipper suffered more than a million dollars in losses. 432 F.3d at 551. "Such a mistake on the part of Plaintiffs, while draconian, is fatal." *Landess*, 977 F. Supp. at 1283. Thus, this Court is forced to conclude that New Process has not produced evidence of all of the elements necessary to excuse its failure to provide notice to Union Pacific within nine months, and therefore Union Pacific's motion for partial summary judgment on the Carmack Amendment claim is **GRANTED**.

## V. MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S DAMAGES

Union Pacific has also filed a motion for summary judgment contesting portions of the damages alleged by New Process, but since New Process's breach of contract and Carmack Amendment claims have been disposed of on summary judgment, the Court need not reach the damages issue. Thus, the motion for partial summary judgment on Plaintiff's damages is **DENIED AS MOOT**.[5]

## VI. MOTION FOR RECONSIDERATION

Finally, Union Pacific has filed a motion asking the Court to reconsider its Order of October 4, 2006, permitting New Process to file a Second Amended Complaint. Specifically, Union Pacific objects to the addition of a new category of damages in the Second Amendment Complaint, but, since New Process's claims have been disposed of on summary judgment, any

---

[5] In New Process's surreply to this motion for partial summary judgment, it also included a motion for leave to file supplemental evidence (Doc. No. 137). Because the motion for summary judgment has been denied as moot, the motion for leave to file supplemental evidence related to the motion for summary judgment is also **DENIED AS MOOT**.

issue as to damages alleged in the Second Amended Complaint is rendered moot. Thus, the motion for reconsideration is **DENIED AS MOOT**.

## VII. CONCLUSION

In sum, Union Pacific's motion for partial summary judgment on Plaintiff's claim for breach of contract as a third-party beneficiary (Doc. No. 104) is **GRANTED**, and New Process's motion for a continuance in ruling on that motion (Doc. No. 133) is **DENIED**.

Union Pacific's motion for partial summary judgment on Plaintiff's Carmack Amendment claim (Doc. No. 110) is **GRANTED**; New Process's motion for leave to file a supplemental response (Doc. No. 134) is **GRANTED**; and Union Pacific's unopposed motion for leave to supplement the summary judgment record (Doc. No. 118) is **GRANTED**.

Union Pacific's motion for partial summary judgment on Plaintiff's damages (Doc. No. 118) is **DENIED AS MOOT**, and New Process's motion for leave to file supplemental evidence (Doc. No. 137) is also **DENIED AS MOOT**.

Union Pacific's motion for reconsideration (Doc. No. 119) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**SIGNED** this 22nd day of December, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT

13